UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UP-RITE SYSTEMS, INC., | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:15-cv-710 |
| | ) JUDGE CRENSHAW |
| JOSHUA ALLENDER, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Up-Rite Systems, Inc., alleges that Joshua Allender violated a non-compete agreement. Allender seeks dismissal of the case under Federal Rule of Civil Procedure 12(b)(2), alleging that the Court does not have personal jurisdiction over him. (Doc. No. 8.) The Court has specific jurisdiction over Allender. Accordingly, his motion to dismiss is **DENIED**.

**I.  Allegations**

Allender is a Kentucky resident. From 1996 through January 5, 2015, he worked as a field supervisor for Up-Rite Systems, Inc. (Allender Decl., Doc. No. 8-2 at ¶ 5), which until June 20, 2014 was a Kentucky corporation ("Up-Rite Kentucky) (Wimsett Decl., Doc. No. 15-2 at ¶ 2). Up-Rite Kentucky performed rack installation services for customers throughout the United States. (Id. at ¶ 3.) While employed for Up-Rite Kentucky, Allender worked on projects in Tennessee for 47 hours in 2012 and 410 hours in 2013. (Id.) On May 29, 2014, at the request of Up-Rite Kentucky, Allender signed a Non-Competition, Non-Solicitation, Non-Disclosure Agreement ("Non-Compete Agreement"). (Id. at ¶ 4.) Allender was in Indiana when he signed the agreement. At that time, he knew that Up-Rite Kentucky was being acquired by a subsidiary of Fletchline,

Inc. ("Fletchline"), a Tennessee company with whom Up-Rite Kentucky had worked on installation projects. (Id.)

On June 4, 2014, Up-Rite Systems, Inc., was incorporated in the State of Tennessee ("Up-Rite Tennessee"). (Fletcher Decl., Doc. No. 40-1 at ¶ 3.) On June 20, 2014, Up-Rite Tennessee purchased the assets of Up-Rite Kentucky, including the Non-Compete Agreement signed by Allender. (Id.) On that date, Allender became an employee of Up-Rite Tennessee, continuing in his role as a field supervisor and project manager. (Id. at ¶ 4.) Beginning July 2, 2014, Up-Rite Tennessee's home office in Springfield, Tennessee paid Allender's compensation and reimbursement expenses. (Id. at ¶ 5.) Fletchline owns 100% of the stock of Up-Rite Tennessee. (Id. at ¶2.)

In September 2014, Allender asked Edward Fletcher, Jr.—the President and Chief Executive Officer of Fletchline and President of Up-Rite Tennessee—if he could come to Tennessee to meet. During the meeting, Allender offered to have his consulting business help Up-Rite Tennessee provide services to its clients. (Id. at ¶ 7.) Fletcher told him that this would be violate the terms of the Non-Compete Agreement. (Id.)

On November 7-8, 2014, Allender came to Springfield, Tennessee for required training for project managers and supervisors, during which he initiated a discussion with Fletcher about his compensation. (Id. at ¶ 6.)

On January 5, 2015, Allender sent an email to Fletcher resigning as an employee and reiterating his desire to have his consulting business work with Up-Rite Tennessee as an independent contractor. (Id. at ¶ 8; Doc. No. 15-3 at 6 (resignation email)). As recently as February 2015, Allender and Wimsett- the former President of Up-Rite Kentucky and Allender's supervisor

both before and after Up-Rite Tennessee purchased Up-Rite Kentucky—had conversations about the possibility of Allender returning to work for Up-Rite Tennessee. (Wimsett Decl. at ¶ 7.)

Up-Rite Tennessee filed a complaint in the Robertson County Chancery Court alleging that Allender violated the Non-Compete Agreement by bidding on and obtaining a contract for a rack installation project with Up-Rite Tennessee's existing customers in Virginia. (Doc. No. 1-1 at 4.) Allender removed the case to this Court on the basis of diversity jurisdiction. (Doc. No. 1.)

## II. Legal Standard

Up-Rite Tennessee bears the burden of establishing the Court's personal jurisdiction over Allender. Beydoun v. Wataniya Restaurants Holding, 768 F.3d 499, 504 (6th Cir. 2014). When, as here, the Court rules on a jurisdictional motion to dismiss without conducting an evidentiary hearing, the plaintiff "need only make a *prima facie* showing of jurisdiction," which can be met by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002). "Under these circumstances, this court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff . . . and will construe the facts in the light most favorable to the nonmoving party in reviewing a dismissal pursuant to Rule 12(b)(2)." Id. The burden on the plaintiff is "relatively slight." Air Products and Controls, Inc. v. Safetech Int'l., Inc., 503 F.3d 544, 549 (6th Cir. 2007).

## III. Personal Jurisdiction

"There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." Conn v. Zakharov, 667 F.3d 705, 712–13 (6th Cir. 2012). A demonstration

of the contacts necessary for either basis is sufficient to establish personal jurisdiction. Youn v. Track, Inc., 324 F.3d 409, 417-18 (6th Cir. 2003). Allender argues that the Court has neither general nor specific jurisdiction over him. Up-Rite Tennessee claims that the Court has both types of jurisdiction over Allender.

"In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations." Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005). "A court's exercise of personal jurisdiction over a nonresident defendant is appropriate only if it meets the state's long-arm statute and constitutional due process requirements." Id. Tennessee's long-arm statute provides that a Tennessee court may exercise jurisdiction over an out-of-state defendant on "[a]ny basis not inconsistent with the constitution of this state or of the United States." TENN. CODE ANN. § 20–2–214(a)(6); see also TENN. CODE ANN. § 20–2–225(2) (same). Accordingly, the long-arm statute has been consistently construed to extend to the limits of federal due process. Gordon v. Greenview Hosp., Inc., 300 S.W.3d 635, 645 (Tenn. 2009); Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 477 (6th Cir. 2003). Thus, the two inquiries are merged, and the Court here need only determine whether exercising personal jurisdiction over the defendants is consistent with federal due process requirements. Bridgeport, 327 F.3d at 477. In order for due process to permit the exercise of personal jurisdiction over a non-resident defendant, the defendant must have "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Youn, 324 F.3d at 417 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

**A. General Jurisdiction**

General jurisdiction requires the defendant to have "continuous, substantial, and systematic" contacts with the forum State. Daimler AG v. Bauman, ___ U.S. ____, 134 S. Ct. 746,

769 (2014). The defendant's "affiliations with the State [must be] so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing International Shoe, 326 U.S. at 317). General jurisdiction allows a plaintiff to sue a defendant "on any and all claims against it, wherever in the world the claims may arise." Daimler, 134 S. Ct. at 751. As the Supreme Court has cautioned, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. 'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" Id. at 760 (quoting Goodyear, 564 U.S. at 924)).

Plaintiff claims the Court has general jurisdiction over Allender because he did work in Tennessee, he continued his employment after his employer became a Tennessee corporation, his compensation and reimbursements were paid from Tennessee, and he initiated discussions in Tennessee with Fletcher about his compensation and his consulting company working with Up-Rite Tennessee. (Doc. No. 15 at 10-11.)

The Court agrees with Allender that it does not have general, all-purpose jurisdiction over him. Allender is a Kentucky resident. He both signed and allegedly breached the Non-Compete Agreement outside of Tennessee. At Up-Rite Tennessee's initiation, not Allender's, he worked on projects in Tennessee in 2012 and 2013, his employer changed from a Kentucky corporation to a Tennessee corporation in 2014, his employer issued his paychecks from Tennessee, and he attended required trainings in Tennessee. These activities are "not the kinds of pervasive contacts that would approximate physical presence within the state, and certainly not the kinds of contacts that [defendant] could reasonably anticipate engendering litigation unrelated to his presence" in the state.

This conclusion comports with the Supreme Court's decision in Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984), in which it found that a business trip by the defendant's CEO to Texas, accepting checks from Texas, and sending its personnel for training in Texas was not enough to confer general jurisdiction. Id. at 416-17. The Court held that "[s]uch unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." Id. at 417 (citing cases). Here, Allender continued to live in Kentucky and periodically travelled to work on projects in Tennessee. His employer's changing from a Kentucky corporation to a Tennessee corporation and issuing his paychecks from Tennessee is the type of unilateral activity of third parties that the Supreme Court found not to constitute sufficient contacts with a forum State to justify an assertion of general jurisdiction.

Nor does the amount of time Allender spent in Tennessee create general jurisdiction over him. See Conn v. Zakharov, 667 F.3d 705, 719 (6th Cir. 2012) (citing with approval Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1045–46 (2d Cir. 1991) (holding that thirteen business trips over the course of eighteen months did not constitute "continuous and systematic" contacts with the forum state)). Allender was in Tennessee the equivalent of a little over a week in 2012, approximately 10 weeks in 2013, and three days in 2014. The standard set by the Supreme Court for consideration of general jurisdiction issues is high. See Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 611 (5th Cir. 2008) ("This circuit has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues."); Conn, 667 F.3d at 718 ((citing with approval 4 Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1067.5, at 520 (3d ed. 2002) (commenting that the Supreme Court's holding in Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984) "suggests very

strongly that the threshold contacts required for a constitutional assertion of general jurisdiction over a nonresident defendant are very substantial, indeed.... quite rigorous")). Allender's contacts are insufficient for him to be considered "at home" in Tennessee.

### B. Specific Jurisdiction

Up-Rite Tennessee contends that the Court has specific jurisdiction over Allender because Allender had fair warning that his activities might cause a violation of the Non-Compete Agreement. (Fletcher Decl., Doc. No. 40-1 at ¶ 7. Thus, according to Up-Rite Tennessee, Allender's activities in Tennessee have a substantial connection with the state and with this litigation. (Doc. No. 15 at 12-18.) The Court agrees.

The assertion of specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy," such as an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear, 564 U.S. at 919. Unlike general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Id. For a court to exercise specific jurisdiction over a defendant, the plaintiff must satisfy the three-part Mohasco test established by the Sixth Circuit for determining whether the exercise of specific jurisdiction is consistent with the principles of due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Machine Co. v. Mohasco Industs., Inc., 401 F.2d 374, 381 (6th Cir. 1968).

The first question—whether the defendant purposefully availed itself of the forum State— is key. Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 550-51 (6th Cir.

2007); Mohasco, 401 F.2d at 381-82. A defendant "purposefully avails" itself "by engaging in activity that should provide 'fair warning' that [it] may have to defend a lawsuit there." Youn v. Track, Inc., 324 F.3d 409, 418 (2003) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The allegations that Allender worked on projects in Tennessee, continued his employment with a Tennessee company, negotiated his salary in Tennessee, attended work-related trainings in Tennessee, and made several efforts to solicit work for his consulting business in Tennessee support a finding that Allender purposefully availed himself to Tennessee such that he had fair warning that he may have to defend a lawsuit here.

The second Mohasco factor requires the Court to consider whether Up-Rite Tennessee's claims "arise from" Allender's contacts with Tennessee. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contracts." Bird v. Parsons, 289 F.3d 865, 875 (6th Cir. 2002). This factor "does not require that the cause of action formally arise from defendant's contacts with the forum; rather, this criterion requires only that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." Id. This factor is satisfied here. Allender was employed by and had a non-compete agreement with a Tennessee company, which he allegedly violated. The President of Up-Rite Tennessee informed Allender at an in-person meeting in Tennessee that the consulting services Allender was contemplating offering to Up-Rite Tennessee's customers would be in violation of the Non-Compete Agreement. (Fletcher Decl., Doc. No. 40-1 at ¶ 7.) Allender's contacts with Tennessee are clearly related to the operative facts of the controversy. Air Prod. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 551 (6th Cir. 2007) ("[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state

are subject to regulation and sanctions for the consequences of their activities.") (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985)); Bird, 289 F.3d at 875.

The last Mohasco factor requires that Allender's acts or the consequences he caused have a substantial enough connection with Tennessee to make the exercise of jurisdiction over him reasonable. "An inference arises that the third factor is satisfied if the first two requirements are met." Id. Allender's alleged violation of the Non-Compete Agreement with Up-Rite Tennessee and the alleged consequences thereof are substantially connected to Tennessee. See Neal v. Janssen, 270 F.3d 328, 332 (6th Cir. 2001) (finding defendant's actions had foreseeable effects in Tennessee, which supported a finding of purposeful availment). Although the alleged breach of the Non-Compete Agreement did not occur in Tennessee, the effects of the alleged breach are felt by Up-Rite Tennessee in Tennessee. "Several factors are relevant to the reasonableness inquiry, including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." Bird, 289 F.3d at 875. Defending a lawsuit in Tennessee will not be unreasonably burdensome to Allender, who lives in the neighboring state of Kentucky. Up-Rite Tennessee clearly has an interest in obtaining relief in Tennessee. The alleged breach of the Non-Compete Agreement took place in Virginia, where neither party lives or has an office. Tennessee is the state with the most substantial connection to the consequences of Allender's alleged breach. The Court concludes that specific jurisdiction in this case is proper.

## IV.    Conclusion

For the foregoing reasons, Defendant's motion to dismiss for lack of personal jurisdiction (Doc. No. 8) is **DENIED**.

The Court will file an accompanying order.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE